which is the United States versus Caraballo-Martinez. Good morning to you. Good morning, May Police Court Judge Marcus. The federal rules of criminal procedure define a sentencing so that at a very minimum the defendant has to be present before the court. The court must address the defendant personally, the defendant must be given an opportunity to allocute, and the district court must make an oral pronouncement of sentencing. Here the district court denied Mr. Caraballo's 3582 C2 motion with a written order. That did not meet the definition under the federal rules of criminal procedure for a sentencing and therefore the district court could not have imposed the limitations contained in Rule 35 imposed on a sentencing. Mr. Caraballo on appeal has acknowledged that this court in United States versus Anderson did contain some language suggesting that the 14-day limitation in Federal Rule 35 could be applied to the situation where a district court denies a 3582 C2 motion what is considered under merits. That is, the person is eligible but the district court nevertheless denies the motion. As we have argued, that language in Anderson is dicta. It is the personification of dicta. It was not the facts that were presented in the Anderson case. It was not necessary for the for the decision in Anderson. Whether it's dicta or not, why is that not the correct holding? Well, Your Honor, I don't think that is what Anderson says particularly when the court does apply the guideline. Yes, Your Honor. The Anderson court, of course, relied on this court's decision in Phillips and quite honestly this might just be academic but I don't believe that Phillips actually survives the Dillon opinion. Phillips was decided. I think the the thrust of the question is even assuming arguendo that the district court was wrong to say that it didn't have power, it didn't have jurisdiction to entertain the claim, it went off on an alternate holding and it said if I have jurisdiction on the merits I would deny the claim because and then provided a variety of reasons. So even assuming arguendo that I agree with you that the district court erroneously said she didn't have the power, she offered an alternative ground, went to the merits and denied the application. Where was the error in that? That's correct. The district court did do that. In fact, I think she incorporated the previous reasons given in a prior order and even though it was in a footnote she did make it clear that her alternate ruling would be on the merits of the denial 3582 C2. To understand why that was an erroneous ruling... Not only would it have to be erroneous but it would have to amount to an abuse of discretion, right? Yes, sir. It would have to amount to an abuse of discretion and we would argue, I think I pointed this out in one of our 28 letters, that in fact it would probably result in manifest injustice. Mr. Caraballo was just a 20-year-old first-time offender when he was present before the court. Convicted, although of a violent crime, a heinous crime, it was a non-homicide crime and the Supreme Court has, in a little bit different context, it was talking about minors in Graham versus Florida, but it did talk to the situation where you have a very young person convicted of a non-homicide and given a sentence of life without the possibility of parole, which is the sentence that Mr. Caraballo got, which the Supreme Court has stated is the second most serious sentence that could be imposed on a criminal defendant. And in Graham versus Florida, the Supreme Court did go into detail and analysis. Again, it was talking about a minor. In the Graham case, it was somebody who was just a month shy of his 18th birthday, who in fact had a prior conviction for a violent crime. And this was the second conviction for a violent crime. And even in that case, the Supreme Court noted how... Well, in that case, actually it was categorically a violation of the Eighth Amendment. We're not arguing that this is a categorical violation of the Eighth Amendment, but certainly it would demonstrate why the sentence, a lifetime imprisonment for a 20-year-old first-time offender convicted of a non-homicide, would constitute a manifest injustice. And here, the district court had an opportunity. And it wasn't just, again, re-entering the same sentence. It was somebody who had spent most of his adult life now in jail and had done everything to demonstrate... I guess the real question here is, we might quarrel with the sentence, but I'm having trouble seeing why it amounts to an abuse when you look at the underlying facts. They're pretty bad. I mean, you've got... The facts of the case are horrific. Oh, yeah. The defendant and two co-defendants abduct a woman, her nine-year-old son, and her one-year-old son, from the parking garage of the condominium where the family lived. One of the co-defendants used a stun gun to incapacitate the mother. Then he and Caraballo Martinez both struck her in the face multiple times. She was seriously injured. She had fractures in her cheekbone, a shattered eye socket, internal hemorrhages, nerve damage, lacerations, et cetera. The three victims were then taken to a rented home where the mother was separated from the sons, tied to a lawn chair, placed inside a closet. The nine-year-old was tied to a chair and kept in the closet. And the victims were held captive for four or five days, separated and restrained from their mother for most of the time. And among other things, the defendant kept watch to ensure they stayed separated and did not attempt to escape. During the captivity, she was forced to write a letter to her husband explaining the abduction and seeking a $70,000 bounty. The district court characterized the crime as particularly heinous and violent. Maybe thirty years would have done instead of life, but the trouble that I'm having is understanding why that gray area between a very, very young person's hands amounts to an abuse of discretion under these circumstances. Yes, sir. And that's why I did file a Seventh Circuit decision that relied on Graham in which a young person was sentenced, again, to a hundred and thirty year sentence. They could get parole, but only after the hundred and thirty years. But the Supreme Court really summarized Your Honor's concerns in Graham v. Ford. Again, Graham dealt with a very violent offense and somebody here had already been convicted of a violent offense. But there, it talked about the fact that somebody who was young and receives a life sentence without the possibility of parole, first of all, would have to . . . their sentence ends up being a lot longer than somebody who's fifty or seventy who receives the same sentence. In imposing that sentence . . . I'm sorry, Your Honor. As a data point for us to consider here, sir, the fact, I believe, is a fact that your client only expressed remorse at the sort of back end of the proceedings. My recollection was that the judge who was dealing with this case in the beginning, when the first motion was put up, noted that there had been no indication of remorse. Then, upon the petition that you filed that got rejected for jurisdictional reasons, remorse was expressed. I just wonder whether that fits into our analysis of the point that the plaintiff made in terms of discretion here. Actually, Your Honor, that finding by the district court was not factually completely correct. In fact, the way that this started was that Mr. Caraballo filed a pro se motion, to which then I filed a memorandum in support. In that initial pro se motion, that's docket entry 351, on page six, he really does state, he says, the defendant knows that the biggest mistake in his life was being involved in this crime for which he is very remorseful and has taken full responsibility for. There was a statement, this was a pro se filing, but there was, from the very beginning, a statement where he acknowledges that what he did was wrong, he takes full responsibility for, and that he is, in fact, remorseful for. I think, more than any statement that he could have provided . . . Why do you suppose that point wasn't repeated when he was benefited by counsel in filing his actual request, which was received by the court? It sounds as if maybe what the judge who was working here hadn't focused on the pro se pleading because it was excluded out of the record. This was part of the record. This pro se motion was filed and it was part of the record. What was filed by counsel was a memorandum in support of that motion. Did he charge the district court judge with the duty to read the document that he has decided he's not authorized to read? No, this . . . Sort of the way I mean, I thought it was in the rules are that the pro se paper couldn't be filed. You're not contesting that, right? Well, this was the initial motion that he filed. I know, and it was properly rejected because he was represented by counsel. No, Your Honor. At that point, this was the initial motion that he filed, the 3582C2 motion. That was filed, has not been rejected. It was after that that counsel was appointed to assist him in that motion. The filing of counsel was a memorandum in support of that initial pro se motion. In addition to that, I see I'm in the red. If I could just quickly answer that point. Sure can. Thank you, Your Honor. I think what Mr. Carballo and counsel were trying to put to the court's attention is more than just a statement of rehabilitation. It was a demonstration by his actions in the last 15, and now 16, years that he has been in prison where he has tried to make the most out of his life. Not only learning how to paint and doing all those things, but using those skills that he has acquired to assist others. He's donated a lot of his paintings that have gone to help kids in children's hospital and have touched a lot of lives. A lot of people have, in fact, come forward to me, even after the appeal has started, with letters to that effect. I think his actions, in addition to that one statement in his pro se motion, demonstrate remorse. I would thank the court for the additional time. Thank you. You have reserved five minutes and you'll have the full rebuttal period. Thank you, Your Honor. Good morning, Your Honor. Andrea Hoffman on behalf of the United States. In this matter, Your Honors, the district court's second order on the second 3582 motion should be affirmed. This court properly applied the jurisdictional test that this court had established in the U.S. v. Anderson case and has since reaffirmed in a series of cases, albeit unpublished, which have all followed the Anderson decision. That test is plain and simply, if there is a merits-based decision on a 3582 motion, then the strictures of Rule 35's fourteen-day limit apply for any reconsideration, secondary motion . . . Let me ask you this question. Yes, Your Honor. I thought the critical statement in Anderson was, quote, that the rationale of Phillips also extends to cases in which the district court denies a defendant's 3582C2 motion on the merits because the denial is still, in essence, a new sentence. Why wasn't that dicta? Your Honor . . . Perhaps it's persuasive dicta, but that wasn't necessary to the ruling in the case, was it? That is to say, procedurally, Anderson is not a merits determination, right? That is correct, Your Honor. So then why wouldn't the comment about the rationale of Phillips extending to merits determinations on 3582C2 be strictly, oh, bitter dictum? Perhaps we should follow it, perhaps we shouldn't, but we are not obliged to follow that prior precedent. What am I misunderstanding there? Your Honor, I saw it as not strictly dicta, as the Court was just Now, in the case of that test, it ends up being a procedural decision versus a merits decision. Was it necessary to the outcome of the decision? No. Right? Only in the sense, sir, that it's setting the original test. No, you're correct. You're correct in the no in the sense that it's a procedural decision. That's the definition of over-dictum, isn't it? That's the definition of over-dictum, I believe. It could be, Your Honor, but to actually establish the test itself, you need . . . But does it add anything to the holding in the case? No, because it's . . . For Anderson, it's a procedural case, not a substantive merits determination. How does it add anything to the strength of its holding in a procedural context for them to have opined that a determination on the merits is still, in essence, a new sentence? Arguably, Your Honor. That might be interesting for the next case, but it didn't move the bar forward in deciding what it had to decide. That could be particularly true, Your Honor, because that case was decided solely on . . . really on the law of the case doctrine. It was fleshing out the test established in Phillips. The subsequent cases, agreedly, they are all unpublished, most recently being U.S. v. Hernandez, as well as a footnote in Means, in U.S. v. Means, in LaRose and Blanco, all have reused this test that was set forth in Anderson. What happens if we view this occasion this morning, Ms. Hoffman, as a request by the government for this panel to extend Anderson . . . pardon me, to extend Phillips to this situation? Your Honor . . . I mean, there was an alternative holding, and Anderson takes that off the place. But if you're saying, when you stand in front of us and say, well, we're bound by Phillips, right? But this isn't a Phillips case, so you're saying you want us to extend Phillips to this fact situation? Absolutely, Your Honor. As this Court did in U.S. v. Hernandez. Let me answer this. Maybe this is because I'm fresh to some of these fields of law from my circuit, but it is rather odd, because what you have is a situation in which, after a guideline change, you have a, quote, resentencing that results in the rather vicious effect of the fourteen-day jurisdictional rule, but deprives the defendant of the benefits that are normally associated with a sentencing. And yet, then you take a situation where there's a guideline change, and a person who's incarcerated comes up and says, well, I think I get a benefit from the guideline change, but he's wrong, because the guidelines don't benefit him. He is not subject to the harsh rule of the fourteen days, right? Doesn't it seem strange to you that the person who didn't really have a chance to get resentenced because they were wrong, is not bit by the fourteen-day rule, and therefore can have a review in the district court and then appellate review here, whereas the person who really had a chance to get a new sentence suffers under the sword of the fourteen-day rule? When you're asking me to extend a rule that seems to me to be full of query at its bottom, because in the sentencing change rule, you're not getting the points that were raised by your adversary there, you're not present in court, you don't get an oral hearing. It's well-established law, both in this circuit and generally in the country, Your Honor, that under a 3582 circumstance, that it is considered a sentencing proceeding, albeit a truncated one. In U.S. v. Jules in the Eleventh Circuit, reiterated in U.S. v. Phillips, the court has consistently said that a 3582 proceeding is a truncated or shortened sentencing, and the court . . . I appreciate the force, and Jules seems to me to be the real hang-up, because it states that you don't get a hearing and that sort of thing, but it just puzzled my mind as to say, why would I want to extend a rule that I have some questions about in the first place? Well, Your Honor, in this circumstance, because the defendant was . . . there is a lengthy, nearly eight-page order that the defendant had an opportunity to challenge. We would have that same rule, 14-day strict rule, Your Honor, on a straight appeal. If this hadn't come up in a context . . . if what had happened wasn't in October of 2015, the defendant had finally filed a notice of appeal, we would still have that same 14-day rule, albeit in the notice of appeal context . . . That didn't happen here. We have a situation where perhaps the defendant felt the more polite thing to do was to go to the district court judge and ask for another shot, rather than burdening the court of appeals? That motion for reconsideration, which is the pro se pleading the court was discussing earlier, I think, that was filed in August, was also many days after the 14-day window. Well, that's presumably because the defendant wasn't aware of the rule. Of the 14-day rule, Your Honor? Of the 14-day rule, sure. This defendant had participated in the appellate process. He's had an experience to know what the 14-day rules are. We do hold . . . the importance of finality of sentences is a critical component in sentencing procedures, Your Honor, and this court, as many others, have long held that finality versus the opportunity to have multiple or repeated or alternative opportunities to challenge a sentence give way to the importance of finality. But when you have a circumstance where a court declines to modify an otherwise final sentence, it doesn't vacate the sentence surreptitiously, it doesn't do anything other than deny the application and retains the original sentence, how does that, in essence, amount to a new sentence? Well, this court said in Phillips that it is . . . In a procedural posture. In a procedural posture. But I'm talking about why it ought, again, to be extended to the substantive posture. If a court simply denies the application, it doesn't impose anything new, it retains the original sentence, why would I say that that's a new sentence? Well, in this circumstance, what the courts have said, that as I understand how the courts have said it, is that because the district court was required to make the Dillon two-step balancing, and did in this case, and determined that there is a different sentencing arena that it could act in, and has chosen not to do that . . . Yeah, because the amendment applied here, retroactively, right? It did. Yes, so the court actually says, the amendment applies, you have a new guideline range, and now I make a decision as to your new sentence. Exactly. And in this circumstance . . . I'm going to ask this question, because there's language in Dillon that I think is important, that cabins, I think, somewhat the issue, and so your opponent can be aware of it. Dillon expressly says, by the Supreme Court, that Rule 43, that requires the defendant to be present at sentencing, excludes 3582C. The Federal Rule of Criminal Procedure 43 says, the requirement that the defendant be present is not applicable to 3582C. Correct, Your Honor. This whole business about being present and right to allocute is expressly accepted for 3582. And that was discussed in Jules, but . . . Is that correct? It is, Your Honor, and that . . . Okay, and then it has this language, so you can be prepared to answer it. It says, like 3582C2, like . . . and it starts with, like 3582C2, Rule 35 delineates a limited set of circumstances in which a sentence may be corrected or reduced. So, the whole paragraph here in Dillon treats Rule 35 as applying to 3582, without regard to whether it's a denial or a grant or whatever here. In any event, we would only extend Phillips to where they said the guideline applied. It goes on to say, Rule 43, therefore, sets the proceedings authorized by 3582C and Rule 35 apart from other types of sentencing proceedings. So, it's almost like it's telling us Rule 35 applies in 3582C2 cases. And both Jules and the decision in Phillips, Your Honor, address part of the concern the defense counsel was raising by making it clear that if there are new . . . But he just said Dillon abrogates Phillips and I'm just trying to focus on Dillon. So what does Dillon tell us? I believe, as the Court just said and as we did in the subsequent cases in this jurisdiction, that Dillon has told us that when we are making substantive decisions on a 3582 category, that that is a truncated, to use that phrase, albeit shortened, sentencing proceeding. One in which the defendant is not required to be present, one in which a hearing is not required to be held, one in which a supplemental PSR is not required to be produced. What Jules and Phillips tell us subsequent and around Dillon is that what needs to be done is that the defendant has to be given an opportunity. It can be solely in writing to address whatever issues have been raised by the new circumstances of the sentencing concerns created by an amended sentencing guideline range. And that concern of giving the defendant an opportunity to have a voice in the new circumstances was plainly met in this case. He filed his initial motion for reduction, there's a memorandum in support. All of that led to the government responded and then there was a reply. All of that says to the first 3582. Then as to the second proceeding, there was a counseled initial motion, a government response and a series of supplemental pleadings. The defendant clearly had an opportunity to address any factors or circumstances that were arisen in the shortened and albeit very narrow focused resentencing proceeding, which is what is required under Dillon, Jules and Phillips. Ms. Hoffman, let's use the balance of your time to go to the merits. Let's assume for the purposes of my question that the district court in fact had the power to entertain it on round two. Tell us why in your view what she did did not amount to an abuse of discretion. Yes, Your Honor. It's also the law of the case would apply as well, but I'll get to that secondarily if I get an opportunity. As to the abuse of discretion. Okay, so that would be the law of the case would be a different theoretical hat. It would be, Your Honor. And the one argued. It's not a question of power, it's a question of the wisdom of exercising it. Yes. It's a judge made doctrine as opposed to what we're talking about is simply having the jurisdiction to do it. If you want to take a minute and talk about law of the case, please feel free. As to the law of the case, just as in U.S. v. Means, the defendant had a district court decision that denied his 3582 circumstances. He chose not to appeal that circumstance in this case as well and then subsequently filed a second one. The court in Means and the court in Anderson, both courts have said that the law of the case controlled the decision by the district court in the first and original circumstance has precedential effect on the factual and legal issues that are risen for the second time in the second motion. That's particularly true in this case because both motions are based on the Amendment 599. Defendant is raising the same authoritative grounds for why his sentence should be reduced. He raised the same factual presentation for it, albeit subject-wise, the same factual presentation, albeit with a few more facts asserted in the second proceeding. So the prior decision and the reasons and the rationale that the court gave, there's been no change of circumstance intervening that would, under the law of the case, exceptions give any reason for a different result. Setting that aside, though, and speaking specifically to the abuse of discretion standard, which is the ordinary standard for a 3582 proceeding, this court, the standard starts by an analysis of the procedural and substantive and this court clearly used the correct test. They clearly determined that the defendant was eligible, recalculated the guidelines correctly, stated what all of that was, and then meticulously walked through the 3553 factors. As this court described in more detail than I will take your time for, the facts of this case are atrocious and clearly have stayed with this judge from the date of the original sentencing to this time. And so the seriousness of the offense is on an enormous scale. The court then focused upon the need to promote a respect for the law, to provide just punishment, to protect the community from this particular defendant, and to deter similar conduct by other persons in a future setting. Did the judge consider the evidence that went to rehabilitation? The court did, albeit the court's not required to under any circumstances. Did the court actually zero in on that issue? It did. In the first opinion, the court said that the defendant showed very little remorse, which they incorporated into the second opinion. In the second opinion, the court said specifically that they had considered the breadth of additional remorse and rehabilitative conduct that had been presented, and that the court did not find it to be persuasive. Specifically, it is in the footnote in that opinion, Your Honor, and it's on the last page of the opinion, and the court said that having considered defendant's expression of characteristics, and having weighed all of the remaining 3553 factors, the court finds that the defendant's sentence of life is sufficient, but not greater than necessary to reflect the series of categories I just described, seriousness, promoted respect, et cetera. In the first hearing, and the first order, which was incorporated by reference, the court specifically said that the defendant's remorse, or excuse me, not remorse, his rehabilitative conduct does not mitigate or in any way help or affect the extraordinary suffering that the victims received, and so that it was not persuaded that these matters . . . that's my words, not the court's, but it's not persuaded by that rehabilitative conduct serving to mitigate the damage to the victims in this case. Thanks very much. Thank you, Your Honor. Before you sit down, I can't find this case of Jules cited. Can you tell me what you're referring to? No, I just want the cite. I don't want any more argument. I got Blanco LaRose unpublished. I don't know what Jules is you're talking about. If you cited it, I can't find it. Jules, Your Honor, is cited at . . . I need my glasses, I apologize . . . Jules, the cite for Jules is 595 Fed 3rd at 1239. It is also cited in the . . . 5-9-what? 595. And is that the Eleventh Circuit? It's the Eleventh Circuit from . . . Okay, that's it. I got it. Thank you. Thank you, Your Honors. Ms. Lopez, let me ask you a question at the outset. We were just finishing up with Ms. Hoffman. Assume for the purposes of my question that we were to say that Anderson doesn't control its dicta on the merits, and therefore the court had jurisdiction to entertain it a second time. Ms. Hoffman has offered a second reason. It isn't jurisdictional. It's more discretionary, but suggests that we ought to apply the well-accepted doctrine of law of the case. This case was fully litigated on Round 1. The issues were fully discussed on Round 1. No appeal was taken from Round 1. There was nothing that amounted to an intervening change in circumstance. Why shouldn't we apply, if nothing else, law of the case and not get to the merits anyway? Yes, Your Honor. Assuming the law of the case would apply where there was no appeal . . . Well, why wouldn't the law of the case apply under the circumstances of this case? The law of the case doctrine has three exceptions, and at least two of them . . . you only need one for it not to apply, but at least two of them apply here. One is that there was new evidence presented. There was, in fact, a full letter of remorse presented by Mr. Caraballo in the second 3582 C2 motion. That would be sufficient to defeat the application of the law of the case doctrine. In addition, there's another exception where the district court's order, if left unchanged, would result in manifest injustice. That would, again, go to the sentence . . . I think it really is close to almost an Eighth Amendment violation under Granby, Florida, to have imposed a life sentence without the possibility of parole on this first-time offender, 20-year-old, non-homicide. Both of those would prevent this court from applying the law of the case doctrine in this situation. To address Judge Hall's question regarding Dillon, I do believe, after reading everything that Dillon does abrogate Phillips. This court would not need to get to that point. It would just need to, as Judge Clevenger said, this is a request to apply Phillips to these facts. Not only the definition of sentencing under the federal rules, but the Dillon decision itself would prevent this court from applying Phillips to this case. The Dillon decision does have some strong language talking about 3582 C2. The language that Your Honor quoted, the proceeding that was talking about in Rule 35, is one of two proceedings. That is, the district court does make a change within 14 days of a sentence that it has already imposed and stated orally in court, or there's a motion by the government on substantial assistance, which is another procedure under Rule 35. Those two procedures under Rule 35 and 3582 C2, those are separate and apart from what is a regular sentence. We know that from Rule 43 of the Federal Rules of Criminal Procedure. Dillon relied greatly on Rule 43 of the Rules of Federal Criminal Procedure and really kind of held that there were two different things. There was a regular sentencing. Somebody comes in, the court addresses that there's a sentence imposed, and then there are these other things that are called sentencing corrections under Rule 43, in which the district court, the defendant doesn't have to be present, that doesn't have to be any of the regular trappings of a sentencing. I do believe that this court can, under the facts of this case, read Phillips to still be within Dillon by not applying Phillips to the facts of this case, by not extending it to the facts of this case, because there was no hearing. The defendant was not present. The district court didn't address the defendant. The defendant didn't have an opportunity to allecute. The district court did not make an oral pronouncement of sentence. All those trappings that are required by the Federal Rules of Criminal Procedure . . . Your argument is then that Dillon also abrogates Jules? Yes, Your Honor, to that extent. What Dillon does . . . That's a reach, isn't it? Well, it certainly, again, would abrogate Jules and Phillips only to the extent that this court would apply those to this situation, in which a district court had denied a 3582 C2 motion, finding that the defendant was eligible, but nevertheless denying any kind of reduction. I mean, you're asking us more than you really need to ask us. You're asking us, in essence, to get rid of two precedents of this court on the grounds that Dillon breathes hot air on them, when your easier argument, it seems to me, is just as a matter of policy, we are not obligated to extend Phillips to this situation, and from your perspective, there are reasons why you wouldn't. That's correct, Your Honor. That is the argument that actually we made in our briefs. How many dragons do we have to slay to get where you want us to get? That's why I stated earlier, this court would not have to address the issue of whether Dillon, in fact, abrogated Phillips. It would just have to not apply Phillips to this situation for a matter of policy based on . . . On your exception to the law of the case, doctor, and that the presiding judge was asking you about, it seems to me like your real argument is that there was new evidence in the form of this more elaborate statement of remorse, but when you and I were talking earlier, you were confident that your client had made a sufficient statement of remorse initially. Right. He had made the one sentence statement. Why is the additional decoration, if you will, of the initial statement of remorse, quote, new evidence for purposes of barring the law of the case, doctor? See that I'm in my right, if I could just quickly answer . . . Again, under the law of the case doctrine, it just has to be that different enough. Was there something presented that was different that was not presented initially? That letter was something that was, in our view . . . What it amounts to is he said he had remorse on round one, and then he submitted another declaration that said, I really, really mean that I had remorse. It was a lot more detailed. I want to know why. I understand, but why is that new or different? It really goes to what the district court . . . the district court's initial order almost was an invitation to present further evidence as to the remorse. She still felt that the evidence was lacking, and that's what he presented, this statement that was not present in the first one. There's also the additional fact that the sentence, life sentence, would constitute manifest injustice, which also is an exception. I thank the court for this opportunity. Thank you. Thank you.